UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE CO., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| THUNDERBOLT HARBOUR PHASE II CONDOMINIUM ASSOCIATION, INC., and MICHAEL F. RYAN, in his Capacity as an Officer, Director, and/or sole Member for the Board of Directors of Thunderbolt Harbour Phase II Condominium Association, Inc., | ) ) ) ) ) ) ) ) ) | Case No. CV414-222 |
| Defendants. | ) | |

## ORDER

In this insurance coverage dispute, plaintiff Cincinnati Insurance Co. moves for a protective order sanctioning its refusal to respond to certain requests for admission from defendant Thunderbolt Harbour Phase II Condominium Association (Thunderbolt). Doc. 21. Thunderbolt opposes or, in the alternative, seeks a stay of this matter. Doc. 25 at 6. The district judge already denied Thunderbolt's stay request, doc. 34, and it otherwise lacks standing to pursue the defenses its requests for admission target. Cincinnati's motion therefore is **GRANTED**.

**I.    BACKGROUND**

In 2010, Thunderbolt sued defendant Michael Ryan, a Thunderbolt shareholder, for claims arising from the construction of condominiums (*Thunderbolt I*). Doc. 34 at 2 (citing doc. 1-4). Ryan filed for bankruptcy in April 2011, which automatically stayed *Thunderbolt I*. The bankruptcy court lifted the stay on condition that (1) Ryan's insurance (which also is Thunderbolt's insurance) provided a defense, and (2) Thunderbolt confined its recovery to the limits of insurance coverage and not otherwise diminish Ryan's bankruptcy estate. Doc. 1-11 at 6. Two years later, Ryan was discharged from bankruptcy. Doc. 26-1. *Thunderbolt I* remains pending.

Cincinnati filed this case (*Thunderbolt II*) on October 3, 2014 seeking a "judgment declaring that it does not owe defense or indemnity to [Ryan]." Doc. 1 at 1. Ryan never answered and is in default. *See* doc. 20. Meanwhile, Thunderbolt asserts that Cincinnati waived, and should be estopped from asserting, its right to raise coverage-based defenses to paying damages in *Thunderbolt I*. *See* doc. 8 at 2; doc. 25 at 2-3. Cincinnati, by contrast, insists that Thunderbolt lacks standing to pursue those defenses and that it is not obligated to respond to Thunderbolt's related requests for admission. Doc. 21 (motion for protective order); doc. 25-2 (requests for admission).

II.   ANALYSIS

Fed. R. Civ. P. 26(c)(1)(D) permits "any person from whom discovery is sought" to move for an order "forbidding inquiry into certain matters, or limiting the scope of . . . discovery." Moving parties must demonstrate good cause for the requested protection,[1] *id.*, but ultimately courts have "wide discretion in setting the limits of discovery through protective orders." *Polk v. Nugent*, 554 F. App'x 795, 798 (11th Cir. 2014) (quoting *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 354 (11th Cir. 2012)).

Cincinnati argues that Thunderbolt lacks standing "to assert the defenses of waiver and estoppel as to the rights, duties, and obligations owed to Michael Ryan by Cincinnati," and thus those "defenses are not cognizable in this action and discovery related to them is irrelevant." Doc. 21 at 5. Unpacking that argument helps frame the analysis. First, the Court must decide whether Thunderbolt has standing to assert waiver. Second, regardless of the answer to that question (though informed by it) the Court must decide whether the discovery requests Thunderbolt propounded are relevant and thus within the scope of Fed. R. Civ. P. 26(b).

---

[1] Movants must also certify that they conferred in good faith with the other party "in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Although Thunderbolt has not complained about a failure to confer, Cincinnati's motion lacks this certification. Nevertheless, this discovery dispute tangentially cuts at this case's heart: whether Cincinnati must cover Ryan. The two parties are diametrically opposed on that issue, and the Court accordingly chooses to exercise its "wide discretion" in this area to decide Cincinnati's motion rather than press pause and require what in all likelihood would be a pointless conference. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 354 (11th Cir. 2012).

A.  Standing

This Court recently decided whether an injured party had standing to challenge the adequacy of an insurer's reservation of rights in a case similar to this one.  See *Progressive Mountain Ins. Co. v. Anderson*, ___ F. Supp. 3d. ___, 2015 WL 510111 at * 5 (S.D. Ga. Feb. 6, 2015).  There, Progressive named a car accident victim, the at-fault driver (Progressive's insured), and the victim's uninsured motorist carrier as defendants in an action seeking a declaration that Progressive owed no defense to its insured in the underlying state court personal injury suit.  *Id.* at * 2.  The insured "failed to plead or otherwise respond to the complaint," just as Ryan did here.  *Id.*  "[B]y nature of his default," the insured, also like Ryan, "failed to raise any argument regarding the sufficiency of . . . the reservation of rights."  *Id.* at * 4.  Instead, the injured party, much as Thunderbolt does here, argued that Progressive "was estopped from asserting coverage defenses because of an untimely reservation of rights." *Id.*

This Court held that neither the injured party nor his uninsured carrier had standing to challenge the adequacy of Progressive's reservation of rights.  *Id.* at * 4-5 (citing *Capital Indem. Corp. v. Fraley*, 266 Ga. App. 561, 563 (2004)).  "In the absence of policy provisions to the contrary, one who

4

suffers injury is not in privity of contract with the insurer under a liability insurance policy," and thus may "not sue the insurer directly." *Fraley*, 266 Ga. App. at 563. That principle -- only parties to an insurance contract have rights under it -- also informs whether non-parties may assert defenses in declaratory judgment actions that derive from the contract. With that in mind,

> [a] 'reservation of rights' typically refers to an insurer's notice to its insured that it will provide a defense, but may litigate and ultimately deny coverage if the insured is found liable. In this case, [Cincinnati's] contract was with [Ryan]. Thus, [Cincinnati's] "right to deny coverage" flows only to [Ryan]. Any reservation of that right would have to be directed to [Ryan] and [Thunderbolt] may not complain about [Cincinnati's] failure to provide such notice.

*Id.*

Two features of this case distinguish it from *Progressive* and *Fraley*. Neither, however, suggests Thunderbolt should be able to assert waiver and estoppel. First, Ryan and Thunderbolt are both insured under the same Cincinnati policy. Thunderbolt thus is technically in contractual privity with Cincinnati, unlike the injured parties in *Progressive* and *Fraley*. *See Decatur N. Assocs., Ltd. v. Builders Glass, Inc.*, 180 Ga. App. 862, 863 (1986) ("'Privity of contract' is narrowly defined as '[t]hat connection or relationship which exists between two or more *contracting parties*.") (emphasis added, cite omitted). Thunderbolt suggests that distinction

militates in favor of allowing it to assert what in typical situations is Ryan's right. Doc. 25 at 5.

It does not. Privity is a requirement for enforcing provisions of a contract because, in most situations, the parties to a contract are the only ones with legal rights and obligations *under the contract* at stake in a given case. *See Builders Glass*, 180 Ga. App. at 865; *but see Haynes v. McCalla Raymer*, ___ F.3d ___, 2015 WL 4188459 at * 3 (11th Cir. July 13, 2015) (recognizing third-party beneficiary and assignment exceptions to privity requirement under Georgia law); *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (2011) (intended third-party beneficiaries, even though not in privity with the parties to a contract, may "maintain an action against the promisor on the contract") (quoting O.C.G.A. § 9-2-20(b)); *Level One Contact, Inc. v. BJL Enters., LLC*, 305 Ga. App. 78, 80 (2010) ("An exception to th[e] requirement of contractual privity occurs when a party assigns another the contractual right. . . ."). Despite being a named insured, Thunderbolt, like non-parties, does not have any right to recovery under the contract in this case.[2] The right to have Cincinnati pay claims (assuming the insurance contract covers such damages) flows to Ryan since he is the party claimed against. *See, e.g.*, doc. 1-1 at 16 (Cincinnati

---

[2] Thunderbolt would, of course, have rights under its contract with Cincinnati if it stood in the same position as Ryan -- i.e., it was being sued.

"will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'"). Correspondingly, the obligation to pay claims falls on Cincinnati, while certain other obligations connected to the right to have claims paid fall on Ryan (notice of incident, etc.). *See, e.g.*, doc. 1-2 at 19 (insureds "must see to it that [Cincinnati is] notified as soon as practicable of an 'occurrence' which may result in a claim or 'suit'"). In fact, Thunderbolt's only right or claim (or, for that matter, obligation) is a tort claim (which it asserts in *Thunderbolt I*) against Ryan since he allegedly caused Thunderbolt's injury. In other words, Thunderbolt's role as the injured party deprives it of the legal relationship to the contract at issue, typically well-captured by the doctrine of privity, which justifies standing.

The sterile application of privity concepts Thunderbolt advances also ignores the instant insurance contract's "separation-of-insureds" provision. That clause provides that the "insurance applies: [a]s if each Named Insured were the only Named Insured; and [s]eparately to each insured against whom claim is made or 'suit' is brought." Doc. 1-1 at 30. "The purpose of . . . separation-of-insured clauses . . . is to provide each insured with separate coverage, as if each were separately insured with a distinct policy." *Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co.*, 319 Ga. App.

400, 405 (2012). Consequently, "[w]hen a claim is made against one who is an 'insured' under the policy," only that insured "is 'the insured,' for the purpose of determining the [insurer's] obligations with respect to such claim." *Id.* at 406.

An insurer like Cincinnati thus only owes "the insured" notice of its reservation of rights regardless of whether multiple people or entities are named insureds under the policy. Here, "the insured" is Ryan, not Thunderbolt, since he is the party "against whom claim [was] made." Doc. 1-1 at 30. Unlike the insured party in *Fraley* and *Progressive,* then, Thunderbolt cannot look to its contract with Cincinnati for any right or obligation relevant to its claims in this case. *See Monroe Guarantee*, 319 Ga. App. at 405. Read in conjunction with *Fraley*'s rule that only insureds, not injured parties, may complain about an insurer's failure to provide a timely reservation of rights, 266 Ga. App. at 563, the "separation-of-insureds" clause reinforces the conclusion that Thunderbolt lacks standing to assert waiver and estoppel defenses.

Second, Ryan's bankruptcy also distinguishes this case from *Fraley* and *Progressive* by altering the traditional balance of interests in insurance coverage disputes. In most situations, an insured, like Ryan, very much wants his insurer to provide coverage. Challenging the validity of a

8

reservation of rights or vigorously defending a suit like this case thus are in an insured's interests.

After the consent order allowing *Thunderbolt I* to proceed, however, Ryan had no interest in whether Cincinnati provided coverage or a defense (which may well explain his default in this case). By filing for bankruptcy, doc 1-10, he achieved an instant reprieve from Thunderbolt's claims, and he achieved a permanent reprieve upon discharge. The consent order retained Ryan's protection by limiting his liability to the coverage provided by the Cincinnati policy and by permitting the case to proceed only if Cincinnati provided a defense. Doc. 1-12. Thereafter, he had no personal liability and thus no incentive to assert defenses he otherwise would have every incentive to raise. *See* doc. 26-1. Instead, Thunderbolt became the only party with any real interest in seeing Cincinnati pay claims.

Thunderbolt therefore contends that barring a waiver defense would allow Ryan to effectively "'tak[e] a contrary position'" to the one he took "when he consented to the lifting of the [bankruptcy court's] automatic stay." Doc. 30 at 3 (quoting doc. 25 at 4). That, Thunderbolt says, warrants applying a modified version of judicial estoppel to prevent (1) Ryan from, *in absentia*, declining to plead waiver and estoppel defenses, and (2) Cincinnati from taking "advantage of Mr. Ryan's foreseeable default

in [this] action." Doc. 25 at 4. Doing so would, practically speaking, "allow Thunderbolt . . . to step into Mr. Ryan's shoes," and therefore confers standing on Thunderbolt to assert defenses Ryan abandons. *Id.*

Whatever Ryan's intent in consenting to the stay modification, allowing *Thunderbolt I* to proceed did not, even with conditions attached to the stay modification, vest Thunderbolt with an equitable right to pursue defenses in this action that belong only to Ryan. Ryan remains the insured party and Thunderbolt remains the injured party regardless of the consent order. Principles of judicial estoppel do not suggest a contrary conclusion because they simply do not apply here.

"[J]udicial estoppel provides that a party may not assume a position in a legal proceeding, succeed by maintaining that position, then assume a contrary position especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Barron v. Wells Fargo Bank*, ___ Ga. App. ___, 2015 WL 1343232 at * 3 (Mar. 26, 2015).[3] Ryan, however, never took a particular position in his bankruptcy proceeding contrary to a position he takes in this case. For starters, he hasn't taken a

---

[3] The Court applies Georgia's doctrine of judicial estoppel because "[t]he Eleventh Circuit has made it clear that, in a diversity case, 'the application of the doctrine of judicial estoppel is governed by state law.' *Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995). This action arose in Georgia; therefore, Georgia's doctrine of judicial estoppel applies." *Tuten v. Target Corp.* 2014 WL 6908866 at * 2 (S.D. Ga. 2014).

position in this case at all since he is in default.  Even if the Court considers his default to be "position taking by omission" (the position presumably being that Cincinnati did not waive its ability to deny coverage), it still would not trigger judicial estoppel because Ryan did not take a contrary position in an earlier proceeding.  By consenting to the stay modification (which Thunderbolt moved for, doc. 1-12 at 2), Ryan simply agreed that Thunderbolt could pursue claims against him so long as they did not diminish his bankruptcy estate.  Ryan never took a position regarding Cincinnati's coverage of Thunderbolt's claims or its reservation of rights.

Three factors create a unique balance of incentives, rights, and obligations not found in cases like *Progressive* and *Fraley*: Ryan's bankruptcy (effectively relieving him of any personal liability in *Thunderbolt I*), his default in this action, and Thunderbolt's status as a named insured under the same Cincinnati policy covering Ryan.  That balance, however, does not suggest that an injured party like Thunderbolt should have standing to assert rights under an insurance contract that belong to the insured party.  Accordingly, the Court finds that Thunderbolt lacks standing to assert the defenses of waiver and estoppel.  It now must consider whether that finding should excuse Cincinnati from responding to Thunderbolt's requests for admission.

B.  **Relevancy**

Even though Thunderbolt cannot assert waiver and estoppel, its requests for admission may still be proper if they are relevant to a claim or defense in this action. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). And relevance is a broad concept, encompassing "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Healthcare Servs. Grp., Inc. v. Lower Oconee Cmty. Hosp.*, 2014 WL 4385714 at * 1 (S.D. Ga. Sept. 3, 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Requests 1-19 and 27-31 -- the requests Cincinnati objects to -- relate to (1) the conduct of Martin Kent, a lawyer Cincinnati paid to represent Ryan in *Thunderbolt I*; (2) the timing of Kent's representation of Ryan; (3) Cincinnati's reservation of rights; and (4) Cincinnati's defense of Ryan more generally. *See* doc. 25-2 at 2-7. The Court cannot conceive why these requests are relevant if not to explore whether Cincinnati waived, or should be estopped from asserting, coverage defenses.

Thunderbolt has no standing to assert waiver and estoppel, however, so waiver and estoppel defenses are not "in the case" so far as Thunderbolt is concerned. *Lower Oconee Community Hospital*, 2014 WL 4385714 at * 1. Requests aimed at those defenses, then, are not relevant. *Cf. State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 695 (S.D. Ga. 2013) (protective order blocking 30(b)(6) deposition and requests for production as irrelevant under Rule 26(b)(1) was justified because the party seeking discovery had no standing to pursue claims supported by the discovery sought).

III. **CONCLUSION**

Cincinnati's motion for a protective order therefore is **GRANTED**. Doc. 21. Thunderbolt may not propound discovery requests or ask deposition witnesses questions related to whether Cincinnati has waived or is estopped from asserting coverage defenses based on its reservation of rights sent to Ryan. In particular, Cincinnati need not respond to Thunderbolt's requests for admission nos. 1-19 and 27-31. Doc. 25-2 at 2-7.

**SO ORDERED** this 20th day of July, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA